**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
JOHN POSITANO,

                      Plaintiff,

               -against-

STATE OF NEW YORK,
DAVID FREUNDLICH,
THERESA WHELAN, Both Individually and
in their Officially Capacity,
TODD ZIMMER,
TODD ZIMMER And ASSOCIATES,
MARGARET "Peggy" GADE, and
LIZ SMITH,

                    Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
12-CV-2288 (ADS)(AKT)

## APPEARANCES:

**John A. Positano, Esq.**
*Plaintiff pro se*
52 Beech Avenue
Farmingville, NY 11738

**New York State Attorney General**
*Attorneys for the Defendants State of New York, David Freundlich and Theresa Whelan*
200 Old Country Road, Suite 240
       By:  Ralph Pernick, Assistant New York State Attorney General

**Margaret Gade**
*Defendant pro se*
24 College Road
Selden, NY 11784

## NO APPEARANCES:

Todd Zimmer
Todd Zimmer and Associates
Liz Smith

**SPATT, District Judge**.

On May 9, 2012, the Plaintiff John Positano, a <u>pro se</u> attorney ("the Plaintiff"), commenced this action by filing a Complaint against the Defendants State of New York ("the State"), New York State Family Court Judge David Freundlich, individually and in his official capacity ("Judge Freundlich"), New York State Family Court Judge Theresa Whelan, individually and in her official capacity ("Judge Whelan"), Todd Zimmer ("Zimmer"), Todd Zimmer and Associates ("Zimmer and Associates"), Margaret (Peggy) Gade ("Gade") and Liz Smith ("Smith," and collectively, "the Defendants"). The Plaintiff seeks relief pursuant to 42 U.S.C. §§ 1983 and 1985, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12201 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794.

Presently before the Court is a motion by the State, Judge Freundlich and Judge Whelan (collectively, "the moving Defendants") to dismiss this action for lack of subject matter jurisdiction and for failure to state a claim, pursuant to the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and 12(b)(6). The moving Defendants also seek a "leave to file" filing injunction against the Plaintiff. For the reasons set forth below, the Court grants the moving Defendants' motions.

## I. BACKGROUND

The Court need not provide a lengthy discussion of the facts to resolve this motion. Relevant here is that the Plaintiff is suing Judge Freundlich and Judge Whelan, two Suffolk County Family Court Judges, who allegedly violated his rights under the ADA and Rehabilitation Act during the course of two Family Court proceedings that were brought against the Plaintiff and ultimately dismissed. The first proceeding, before Judge Freundlich, occurred in late 2009. The second proceeding, before Judge Whelan, occurred in April 2010. The

Plaintiff's Complaint makes no specific allegations with respect to the State nor does it provide a legal basis for naming the State in this action.

## II. DISCUSSION

### A.  Legal Standard

#### 1.  Motion to Dismiss Standard Under Fed. R. Civ. P. 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000).  The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard set forth below, except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." <u>Id.</u> at 113.  In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings. <u>Makarova</u>, 201 F.3d at 113.

#### 2.  Motion to Dismiss Standard Under Fed. R. Civ. P. 12(b)(6)

It is well-established that a complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  In deciding whether a complaint meets this threshold, the Court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in the Plaintiff's favor. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009).  In its analysis, the Court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in

bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also

Karmilowicz v. Hartford Fin. Servs. Group, No. 11-3284-cv, 2012 U.S. App. LEXIS 18394, at

*5–6 (2d Cir. Aug. 30, 2012).   Moreover. "[w]hen a plaintiff amends its complaint while a

motion to dismiss is pending, . . . the 'court then has a variety of ways in which it may deal with

the pending motion to dismiss, from denying the motion as moot to considering the merits of the

motion in light of the amended complaint." Roller Bearing Co. of Am., Inc. v. Am. Software,

Inc., 570 F. Supp. 2d 376, 384 (D. Conn. 2008) (citation and internal quotation marks and

altercations omitted).  Only if this Court is satisfied that the Complaint cannot state any set of

facts that would entitle the Plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6).

Hertz Corp. V. City of New York, 1 F.3d 121, 125 (2d Cir. 1993).

### 3. Motion for a "Leave to File" Filing Injunction Standard

"[A] district court may, in its discretion, impose sanctions against litigants who abuse the

judicial process." Malcolm v. Bd. of Educ. of the Honeoye Falls-Lima Cent. Sch. Dist., No. 10-

4287, 2012 U.S. App. LEXIS 26324, at *8 (2d Cir. Dec. 26, 2012) (citation and internal

alterations omitted).  "Pursuant to that authority, a court may prevent a litigant from filing

pleadings, motions or appeals upon a showing of extraordinary circumstances, such as a

demonstrated history of frivolous and vexatious litigation or a failure to comply with sanctions

imposed for such conduct." Id. at *9 (citation omitted).  In addition, instead of "completely

foreclosing the filing of designated categories of cases," some "courts have adopted the less

drastic remedy of subjecting a vexatious litigant to a 'leave of court' requirement with respect to

future filings." In re Martin-Trigona, 9 F.3d 226, 228–29 (2d Cir. 1993); see also Malcolm, 2012

U.S. App. LEXIS at *8–11 (2d Cir. Dec. 26, 2012) (finding a "leave to file" filing sanction to be

a reasonable requirement);  O'Diah v. Port Auth. of N.Y. & N.J., 10-2271-pr, 2010 U.S. App.

LEXIS 27430, at *4 (2d Cir. Dec. 16, 2010) (warning that "the continued filing of duplicative, vexatious, or clearly meritless appeals, motions, or other papers in this Court, will result in the imposition of sanctions, which may include a leave-to-file sanction requiring Appellant to obtain permission from this Court prior to filing any further submissions in this Court").

"Before a filing sanction is imposed [] a litigant must be provided notice and an opportunity to be heard." Malcolm, 2012 U.S. App. LEXIS at *9. In addition, district courts should consider the following five factors when determining whether to grant a filing injunction:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Iwachiw v. N.Y. State DMV, 396 F.3d 525, 528 (2d Cir. 2005). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." Safir v. United States Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986).

**B.  As to the Plaintiff's Claims Against Judge Freundlich and Judge Wheelan**

In his Complaint, the Plaintiff alleges that while acting in their judicial capacity as Family Court Judges, Judge Freundlich and Judge Wheelan violated his rights.  However, such claims are clearly barred by the doctrine of absolute judicial immunity.

In this regard, it is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities or within his or her jurisdiction. See Mireles v. Waco, 502 U.S. 9, 9–12, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991); Maestri v.

Jutkofsky, 860 F.2d 50, 52–53 (2d Cir. 1988). The rule of absolute judicial immunity is necessary because "principled and fearless decision-making" will be compromised if a judge "fears that unsatisfied litigants may hound him with litigation charging malice or corruption." Vasile v. Dean Witter Reynolds Inc., 20 F. Supp. 2d 465, 489 (E.D.N.Y. 1998) (internal quotations and citation omitted).

The Supreme Court has emphasized that the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. Stump v. Sparkman, 435 U.S. 349, 356-57, 55 L. Ed. 2d 331, 98 S. Ct. 1099 (1978) (citation omitted). Absolute immunity exists "however erroneous the act may have been, however injurious in its consequences it may have proved to the plaintiff." Cleavinger v. Saxner, 474 U.S. 193, 199, 106 S. Ct. 496, 500, 88 L. Ed. 2d 507, 513 (1985) (quoting Bradley v. Fisher, 80 U.S. 335, 347, 20 L. Ed. 646, 649 (1871)). "The cloak of immunity is not pierced by allegations of bad faith or malice." Tucker v. Outwater, 118 F.3d 930, 932 (2d Cir. 1997). Indeed, the doctrine of judicial immunity is so expansive that it is overcome only when (1) the action is nonjudicial, i.e., not taken in the judge's judicial capacity; or (2) the action, although judicial in nature, is performed in the complete absence of any jurisdiction. Mireles, 502 U.S. at 11–12.

"The Supreme Court has applied a 'functional' approach in deciding whether an act is judicial for purposes of immunity." Vasile, 20 F. Supp. at 489 (citing Cleavinger, 474 at 200). To determine whether a judge is entitled to absolute immunity the Court must examine the nature of the responsibilities at issue. Id. The Court should consider the nature of the action taken by the Judge, as well as the expectations of the parties, and the adversary nature of the process. Id.

Of importance, "[f]amily court judges are entitled to the same protections from harassment and intimidation resulting from actions taken in their judicial capacity as those

afforded to other state and federal judges. Given the inherently emotional nature of their work, family court judges may be particularly susceptible to harassment." McKnight v. Middleton, 699 F. Supp. 2d 507, 524 (E.D.N.Y. 2010) (quoting Lewittes v. Lobis, 04 Civ. 0155 (JSR) (AJP), 2004 U.S. Dist. LEXIS 16320, at *15 (S.D.N.Y. Aug. 19, 2004)).

Here, the Plaintiff's claims against Judge Freundlich and Judge Whelan stem from their actions while acting as Family Court judges. Specifically, the Plaintiff claims that Judge Freundlich illegally issued a court order directing the Plaintiff to neither see nor communicate with his adult daughters, one of whom was disabled, following the November 18, 2009 filing of a Family Offense Petition. The petition accused the Plaintiff of molesting his children when they were young. Further, the Plaintiff claims that Judge Whelan illegally issued a court order barring the Plaintiff from accessing his home or communicating with his adult children after the filing of a second Family Offense Petition that had similar accusations as the first petition.

Nothing in this case suggests that Judge Freundlich or Judge Whelan were without jurisdiction or that they acted outside their judicial capacity. See Vasile, 20 F. Supp. 2d at 489. Indeed, a court order issued by a Family Court judge in response to the serious accusations raised in a Family Offense petition are clearly a judicial action, and clearly within the scope of the judge's jurisdiction. Thus, while the Plaintiff asserts claims against Judge Freundlich and Judge Whelan in their individual and official capacities, judicial immunity protects judges acting in that role. See McKnight, 699 F. Supp. 2d at 525 (finding that judicial immunity protects Family Court judges acting in their individual and official capacities); Cage v. Balkin, 10-CV-1324(CBA)(LB), 2010 U.S. Dist. LEXIS 30107, at *5 (E.D.N.Y. Mar. 25, 2010) ("As the alleged wrongdoing of defendants Balkin and Kahlon are acts performed in their judicial

capacity during state Family Court proceedings, plaintiff's claims are foreclosed by absolute immunity.")

The Plaintiff's argument that the ADA somehow permits his lawsuit in spite of the doctrine of absolute judicial immunity is unavailing. Courts in this Circuit have recognized that a plaintiff may not bring a lawsuit against a judge for those actions the judge took in his judicial capacity, even when those actions allegedly violated the plaintiff's rights under the ADA. <u>See</u>, <u>e.g.</u>, <u>Bobrowsky v. Yonkers Courthouse</u>, 777 F. Supp. 2d 692 (S.D.N.Y. 2011) (holding that an action brought against three state court judges must be dismissed under the doctrine of absolute judicial immunity where a <u>pro se</u> Plaintiff brought an action against them for violations of the First, Fourth Fifth and Fourteenth Amendments of the United States Constitution, pursuant to § 1983 and the ADA), <u>Roe v. Johnson</u>, 334 F. Supp. 2d 415, 423 (S.D.N.Y. 2004) ("Roe seeks damages pursuant to Section 1983 against individual members of the Committee on the ground that their inquiries during the January 27, 2003 hearing and in subsequent letters violate her rights under the ADA. It is 'well-established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages.'") (citation omitted).

The Plaintiff's reliance on <u>Weixel v. Bd. of Educ. of N.Y.</u>, 287 F.3d 138, 150 (2d Cir. 2002) is misplaced, because that case did not involve a lawsuit brought against judges, but rather involved an action brought against a school district's board of education and its administrators. For similar reasons, the Plaintiff's reliance on <u>Reg'l Econ. Cmty. Action Program v. City of Middletown</u>, 294 F.3d 35 (2d Cir. 2002) is also misplaced, as the plaintiff's lawsuit was not brought against judges, but brought against a city, the city's planning board and the city's mayor.

The Plaintiff's argument that the absolute judicial immunity doctrine does not apply because of the absence of all jurisdiction must also fail. Section 812(1) of the New York State Family Court Act (the "FCA") grants jurisdiction to the Family Court as follows:

> The family court and the criminal courts shall have concurrent jurisdiction over any proceeding concerning acts which would constitute disorderly conduct, harassment in the first degree, harassment in the second degree, aggravated harassment in the second degree, sexual misconduct, forcible touching, sexual abuse in the third degree, sexual abuse in the second degree . . . , stalking in the first degree, stalking in the second degree, stalking in the third degree, stalking in the fourth degree, criminal mischief, menacing in the second degree, menacing in the third degree, reckless endangerment, criminal obstruction of breathing or blood circulation, strangulation in the second degree, strangulation in the first degree, assault in the second degree, assault in the third degree or an attempted assault, criminal obstruction of breathing or blood circulation or strangulation between spouses or former spouses, or between parent and child or between members of the same family or household . . . .

FCA § 812 further states that "[i]n any proceeding pursuant to this article, a court shall not deny an order of protection, or dismiss a petition, solely on the basis that the acts or events alleged are not relatively contemporaneous with the date of the petition, the conclusion of the fact-finding or the conclusion of the dispositional hearing." FCA § 812 defines "members of the same family or household" as including

> (a) persons related by consanguinity or affinity;
> (b) persons legally married to one another;
> (c) persons formerly married to one another regardless of whether they still reside in the same household;
> (d) persons who have a child in common regardless of whether such persons have been married or have lived together at any time; and
> (e) persons who are not related by consanguinity or affinity and who are or have been in an intimate relationship regardless of whether such persons have lived together at any time.

Here, the Family Offense petitions accused the Plaintiff of committing acts against his wife and one of his daughters that were covered under § 812 of the FCA.  Moreover, it is without question that the Plaintiff and his daughters, although adults, would be considered members of the family or household, as they are persons related by consanguinity.  As such, Judge Freundlich and Judge Whelan, as Family Court judges, had jurisdiction over the Family Court proceedings and therefore had the authority to issue the orders at issue in this case.

Thus, Judge Freundlich and Judge Whelan are entitled to absolute judicial immunity with regard to the Plaintiff's claims.  Accordingly, the claims against Judge Freundlich and Judge Whelan are dismissed.

## C.  As to the Plaintiff's Claims Against the State

The Plaintiff's claims against the State must also be dismissed.  Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI; see also Gollomp v. Spitzer, 568 F.3d 355, 365 (2d Cir. 2009).  In other words, "the Eleventh Amendment means that, as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment."  Gollomp, 568 F.3d at 366 (citation and internal quotation marks and alterations omitted).

The Plaintiff's § 1983 claims against the State are barred by the Eleventh Amendment sovereign immunity, for "a state is not a 'person' amenable to suit under § 1983."  Caroselli v. Curci, 371 F. App'x 199, 202 (2d Cir. 2010).  Moreover, recovery against the State under a

theory of <u>respondeat superior</u>, as the Plaintiff appears to raise here, is not permitted by § 1983.

<u>Monell v Department of Social Servs. of City of New York</u>, 436 U.S. 658, 691–94, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Recovery against the State under § 1985 is also barred by Eleventh Amendment sovereign immunity. <u>See</u> <u>Gollomp</u>, 568 F.3d at 368.

As for the Plaintiff's ADA claims, "[i]n <u>United States v. Georgia</u>, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006), the Supreme Court established a three-step process for analyzing whether Congress has validly abrogated a state's sovereign immunity from suit in the context of a particular Title II claim [under the ADA]" <u>Mary Jo C. v. N.Y. State & Local Ret. Sys.</u>, Docket No. 11-2215, 2013 U.S. App. LEXIS 2013, at *12 (2d Cir. Jan. 29, 2013). In this regard, the Supreme Court held that

> [a] court must determine . . . , on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

<u>Id.</u> at *13 (quoting <u>Georgia</u>, 546 U.S. at 159) (internal alterations omitted). "Thus, if a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at an end." <u>Id.</u>

Here, the Plaintiff has failed satisfy the first step, as he has failed to state a Title II claim under the ADA. Specifically, his Complaint does not explain how the State's alleged conduct violated Title II. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Plaintiff does not allege that he is disabled, but rather, states that one of his daughters is disabled and that during her hospitalization she was denied services.

The Plaintiff neither provides factual allegations concerning (1) whether the two facilities where his daughter was hospitalized were public entities; (2) which services, programs or activities she was being denied or excluded from participating in; and (3) whether her exclusion or denial from said services, programs or activities was because of her disability. Therefore, the Plaintiff's claims against the State of New York must be dismissed.

**D.  As to the  Moving Defendants' Motion for a "Leave to File" Filing Injunction**

Prior to bringing this lawsuit, within the span of eleven years, the Plaintiff has commenced at least three other actions in the United States District Court for the Eastern District of New York on behalf of himself and his family.  On September 28, 2001, the Plaintiff, on behalf of himself, his daughters and his then-wife, Marie Positano, filed a Complaint in which he named the State as one of the defendants.  (Pernick Decl., A1.)  In that case, the Plaintiff asserted claims under §§ 1983, 1985 and 1986, as well as the ADA and the Rehabilitation Act, and claimed that his daughters "were deprived of their rights to appropriate educational services and, in retaliation for having sought such services, defendants falsely and maliciously named their parents, Marie and John Positano, in New York State Family Court educational neglect petitions."  (Pernick Decl. A1, A5.)   However, the Court (Seybert, J.) found that "the Eleventh Amendment bars all of the plaintiffs' state law claims as asserted against the State."  (Pernick Decl., A15.)

The Plaintiff was granted leave to file an amended complaint, which he did on October 21, 2002.  (Pernick Decl., A21.)   In a decision dated September 30, 2003, the Court (Seybert, J.) dismissed the Plaintiff's § 1983 claims against the State of New York, because they were barred by Eleventh Amendment immunity.  (Pernick Decl., A35, A45.)  The Court also dismissed the

Plaintiff's ADA, Rehabilitation Act, and §§ 1985 and 1986 claims against the State, because the Plaintiff asserted no allegations to support these claims. (Pernick Decl., A28, A41.)

On November 8, 2002, the Plaintiff commenced a separate lawsuit on behalf of his then-wife, Marie Positano, and one of his daughters. (Pernick Decl., A50, A52.) The Complaint alleged that the Plaintiff's wife and his daughter were discriminated against in violation of the ADA, the Rehabilitation Act and §§ 1983, 1985, 1986 and 1988. (Pernick Decl., A52.) The Appellate Division Second Judicial Department of the State of New York ("the Appellate Division") was named as one of the defendants in the action. (Pernick Decl., A50.)

In a decision dated September 30, 2003, the Court (Seybert, J.) found that "the Appellate Division [wa]s entitled to absolute judicial immunity for statements made in the course of its duties." (Pernick Decl., A57, A69.) It further determined that "the Appellate Division [wa]s a state court, which [wa]s an arm of the State, and [wa]s entitled to Eleventh Amendment immunity from suit in federal court." (Pernick Decl., A57.) For these reasons, among others, the Court dismissed the complaint against the Appellate Division in its entirety. (Pernick Decl., A58.)

On November 16, 2007, the Plaintiff commenced a third action on behalf of himself, his then-wife, Marie Positano, and their two daughters, in the United States District Court of the Eastern District of New York. (Pernick Decl., A70.) The Plaintiff named the State and State University of New York at Stony Brook ("SUNY") as defendants and asserted claims under §§ 1983, 1985 and 1988, as well as the ADA and the Rehabilitation Act. (Pernick Decl., A70–71.) In a decision dated September 30, 2008, the Court (Seybert, J.) first noted:

> Plaintiffs are no strangers to the courts. In 2001, these four Plaintiffs brought suit against various individual defendants as well as Suffolk County, New York State, and agencies of the County and State, alleging violations of the IDEA, ADA, Rehabilitation

> Act, Sections 1983, 1985, and 1986.  In 2002, Marie Positano and
> [her daughter] commenced an action against, among others, a law
> firm and the Second Department Appellate Division alleging
> discrimination in violation of the ADA, Rehabilitation Act, and
> Sections 1983, 1985, 1986 and 1988.  Accordingly, Plaintiffs are
> familiar with many of the principles set forth in this Order.

(Pernick Decl., A71, A102, citations omitted.)

The Court then stated "[a]s was previously explained to these Plaintiffs, which includes counsel, the state and its agencies are immune from Section 1983 claims pursuant to the Eleventh Amendment."  (Pernick Decl., A79–80.)  As such, the Court held that the "Section 1983 claims against [the State] and SUNY [we]re barred by the Eleventh Amendment and because they [we]re not 'persons within Section 1983."  (Pernick Decl., A81.)  The Court also dismissed the claims brought under § 1985, because the complaint failed to state a § 1983 claim and because the complaint was "devoid of any allegations that Defendants conspired to deprive Plaintiffs of their constitutional rights."  (Pernidck Decl., A89–90.)  For similar reasons, the Court dismissed the Rehabilitation Act claim because the allegations in the Complaint did not establish or give rise to the inference that any discriminatory or retaliatory conduct occurred.  (Pernick Decl., A97.)  Finally, the Court dismissed the ADA claims against the State and SUNY, because the claims were "based on access to post-secondary education, which is not a fundamental right protected by the Fourteenth Amendment."  (Pernick Decl., A94–95.)  Hence, the Court found these claims to be "barred by the Eleventh Amendment because Congress' purported abrogation of sovereign immunity in such a situation [wa]s not valid."  (Pernick Decl., A94–95.)   The Court concluded its Order by warning that "frivolous filings will be dismissed with prejudice and may result in sanctions."  (Pernick Decl., A101.)

In light of these previous lawsuits, the Court, in its discretion, finds that a "leave to file" filing injunction is appropriate here.  First, the Court notes that the Plaintiff was given notice and

an opportunity to be heard on this issue, as he was able to and did address the moving Defendants' motion in his opposition papers.  See Robert v. Dep't of Justice, 439 F. App'x 32, 34 (2d Cir. 2011).  In addition, as aforesaid, the Plaintiff was previously warned in previous actions that frivolous filings could result in sanctions.  (Pernick Decl., A101.)

Moreover, the Court finds that a review of the five factors that a district court should consider "in determining whether or not to restrict a litigant's future access to courts" weighs in favor of granting a "leave to file" filing injunction.  Safir, 792 F.2d at 24.  These factors, as discussed above are:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Id. at 24.

In this regard, the Plaintiff has now commenced four separate litigations on behalf of himself and his family in which he has named the State, its agencies and/or its judges as defendants.  The Plaintiff continues to assert similar claims under the ADA, the Rehabilitation Act and §§ 1983 and 1985, despite already having had his previous actions dismissed under the doctrines of Eleventh Amendment immunity and absolute judicial immunity and for his failure to allege any facts that would state a claim under these statutes.  Second, there is no objective good faith basis for the Plaintiff to believe that he could prevail in this action, given the clear state of the law with respect to the absolute judicial immunity and Eleventh Amendment immunity doctrines.  This is especially true given that (1) the Plaintiff, although pro se, is an attorney, and

(2) these doctrines have been explained to him in previous orders issued by the Honorable District Court Judge Joanna Seybert of this Court.  Third, the Plaintiff is not represented by another attorney, but instead, is representing himself and his family in these lawsuits.  Fourth, through this action and the previous ones that he has brought, the Plaintiff has demonstrated an inability to grasp that his claims lack merit, thereby causing needless expense and burden to the other parties and to this Court.  Lastly, as the other four factors weight heavily in favor of granting a "leave to file" filing injunction, the Court believes that monetary sanctions will not be adequate to protect the courts and other parties from future meritless lawsuits.

Accordingly, the Court grants the moving Defendants' motion for a "leave to file" filing injunction.  The Plaintiff is enjoined from filing any further suits against the State of New York, its judges and its agencies without first seeking leave of the Court.  In this regard, the Plaintiff is directed to first present any complaint to a judge of this Court for review, but is not permitted to serve the Complaint unless such judge affirmatively authorizes him to do so.  The terms of this filing injunction applies only to actions brought by the Plaintiff, pro se, and on behalf of his family.

### III.  CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the moving Defendants' motion to dismiss the Complaint as against Judge Freundlich, Judge Whelan and the State of New York is granted, and it is further

**ORDERED**, that the Plaintiff is enjoined from filing any further suits against the State of New York, its judges and its agencies without first seeking leave of this Court.  The Plaintiff is directed to first present any complaint to a judge of this Court for review, and is not permitted to serve the complaint unless such judge affirmatively authorizes him to do so.  The terms of this

filing injunction applies only to actions brought by the Plaintiff, pro se, and on behalf of his family.


**SO ORDERED.**

Dated: Central Islip, New York
        March 7, 2013

                                    _____/s/ Arthur D. Spatt_____
                                      ARTHUR D. SPATT
                                    United States District Judge